# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **JACOB DRESSLER d/b/a CLOVER LANE FARM,** | : |
| | : **Bankruptcy No. 07-25926-MBM** |
| Debtor. | : **Chapter 11** |
| | : |
| **Brian W. Jones t/d/b/a Executive Judgment Enforcement,** | : |
| Plaintiff, | : |
| | : |
| v. | : **Adversary No. 08-2070-MBM** |
| | : |
| **Jacob Dressler d/b/a Clover Lane Farm,** | : |
| | : |
| Defendant. | : |

Appearances:   James F. Donohue, for Brian W. Jones.
Gary H. Simone, for Jacob Dressler.

## MEMORANDUM OPINION

A creditor of Jacob Dressler d/b/a Clover Lane Farm, the above-captioned debtor and defendant herein (hereafter "the Debtor"), seeks to have its judgment claim against the Debtor declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). For the reasons that are set forth below, the Court, after a trial on the matter held on May 12, 2010, holds that such creditor's judgment claim cannot be declared nondischargeable pursuant to § 523(a)(2)(A) and, therefore, such debt shall be discharged.

## STATEMENT OF FACTS

On or about April 17, 2006, an employee of the Debtor was involved in an accident while operating a tractor trailer that was owned by the Debtor (hereafter "the Tractor Trailer"). The Tractor Trailer was towed from the scene of such

accident by an entity named Ohio Valley Towing. Ohio Valley Towing's services regarding the Tractor Trailer included cleaning up the accident scene, preparing the Tractor Trailer for righting onto the roadway, towing to Ohio Valley Towing's storage area, and storage of said vehicle. On April 26, 2006, the Debtor's son appeared at the premises of Ohio Valley Towing, at which time he presented a check to Ohio Valley Towing in payment for the above services, after which he obtained the release of the Tractor Trailer on behalf of the Debtor.

The parties dispute facts regarding the tender of the check that was given to Ohio Valley Towing. Ohio Valley Towing's owner, an individual named Michael Smitley, testified that when the check was given to him by the Debtor's son, the amount of the check was already completed in the amount of $8,246.10, which amount equalled Ohio Valley Towing's bill for its services. The Debtor testified that, although his son actually did complete such check for the $8,246.10 amount while on the premises of Ohio Valley Towing, he did so against the wishes of the Debtor. The Debtor testified (a) that Smitley and himself had agreed, prior to when his son arrived at Ohio Valley Towing's premises on April 26, 2006, to an arrangement whereby Smitley would accept from the Debtor as full payment for Ohio Valley Towing's services whatever amount the Debtor's insurance company was willing to pay regarding the accident of the Tractor Trailer, (b) that, when he gave such check to his son to deliver to Ohio Valley Towing, it was blank as to the amount thereof, (c) that such check was not supposed to be completed as to such amount until the Debtor would subsequently learn of insurance company details, and (d) that such amount was

2

ultimately to be filled in on the check by Smitley and not the Debtor's son.

The check for $8,246.10 was ultimately dishonored by the bank upon which the Debtor drew such check, and the Debtor concedes that he affirmatively stopped payment on such check. The Debtor testified that he stopped payment on such check only because he had not agreed that such check was to be tendered by his son for the amount of $8,246.10. The Debtor subsequently tendered a replacement check dated May 3, 2006, for $5,655, which amount the Debtor testified represents what his insurance company ultimately payed to him for his claim regarding the accident of the Tractor Trailer. Smitley, on behalf of Ohio Valley Towing, refused to accept such replacement check and, therefore, never negotiated such replacement check.

Smitley, on behalf of Ohio Valley Towing, then pursued a civil action against the Debtor for the full amount of its $8,246.10 bill, and ultimately succeeded in obtaining a judgment in an Ohio state court. Ohio Valley Towing's claim as of the date of the Debtor's bankruptcy petition filing equalled $8,713.17. Ohio Valley Towing has since assigned such judgment claim to Brian W. Jones t/d/b/a Executive Judgment Enforcement (hereafter "Jones") for collection. Jones now seeks to have such judgment debt declared nondischargeable pursuant to § 523(a)(2)(A); Jones does not seek to except such debt from discharge pursuant to any other paragraph of § 523(a).

## **DISCUSSION**

Jones' contention that Ohio Valley Towing's judgment claim should be declared nondischargeable pursuant to § 523(a)(2)(A) is predicated as follows:

3

(a) the Debtor, according to Jones, never intended, when the first check was given to Ohio Valley Towing on April 26, 2006, to honor such check, (b) Ohio Valley Towing, in justifiable reliance on what Jones contends was the Debtor's implicit representation that he would honor such check, released its collateral, namely the Tractor Trailer, and (c) the Debtor, according to Jones, thus thereby engaged in actual fraud and/or made a knowingly false representation.

11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt–
>
> > (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> >
> > > (A)  false pretenses, a false representation, or actual fraud.

11 U.S.C.A. § 523(a)(2)(A) (West 2010).  The Court has had numerous previous occasions upon which to set forth much of the relevant law regarding § 523(a)(2)(A) causes of action.  In particular,

> "The party seeking to establish an exception to the discharge of a debt [under § 523(a)(2)(A)] bears the burden of proof ... by a preponderance of the evidence."

> In order for a debt to be excepted from discharge under § 523(a)(2)(A) as one for "a false representation," a creditor must prove, by a preponderance of the evidence, that:
>
> > (1)  the debtor made ... [a] representation;

(2) [at] the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff ... [justifiably] relied on the representation ...; and

(5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

"[A] 'false pretense' involves an implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation."  In order for a debt to be excepted from discharge under § 523(a)(2)(A) as one for false pretenses, a creditor must, with respect to the implied representation or conduct that is asserted to constitute the false pretenses, preponderantly prove each of the elements that must be shown in order to prevail under § 523(a)(2)(A) with respect to a false representation; stated differently, a § 523(a)(2)(A) cause of action predicated upon false pretenses also requires, *inter alia*, "a showing of justifiable reliance and causation of loss."

Courts disagree regarding whether "actual fraud" within the meaning of § 523(a)(2)(A) means more than, or can be established

other than by proving the existence of, a "false representation." However, even for those courts that hold that "[a]ctual fraud is a broader concept than fraudulent misrepresentation ...[, that is that] actual fraud encompasses fraud that is not based on any representation," such courts nevertheless hold as well that actual fraud cannot be found to have existed unless "the debtor was [also] guilty of intent to defraud."

In re Ali, 321 B.R. 685, 690-691 (Bankr.W.D.Pa. 2005) (citations omitted). Furthermore, and as a threshold matter, the fraud or false representation of a debtor is not actionable (i.e., is not relevant) under § 523(a)(2)(A) unless the subject of the debt that is sought to be declared nondischargeable – i.e., the money, property, services, or credit that is obtained by such debtor and that leads to the incurrence of the debt in question – is obtained by such fraud or false representation. See In re Spigel, 260 F.3d 27, 32-33 (1st Cir. 2001) ("the statutory language [of § 523(a)(2)(A)] does not 'remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentations or malice'"); In re Burke, 405 B.R. 626, 646 (Bankr.N.D.Ill. 2009) (citing McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000), to the effect that to prevail under § 523(a)(2)(A), "the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute").

Applying the foregoing law to the instant matter, the Court can make quick

6

work of resolving the same. First, the Court finds that it is at least as likely as not that the facts surrounding the tender of the first check on April 26, 2006, are those as related to the Court by the Debtor at trial – that is, it is at least as likely as not that, prior to when Smitley received the first check from the Debtor's son, the Debtor had a deal with Smitley that Smitley would take from the Debtor's son on April 26, 2006, a blank check to then later be completed by Smitley in the amount that the Debtor's insurance company would pay on the Tractor Trailer claim. That being the case, the Court cannot find that Jones preponderantly proves that (a) the Debtor knew, when the first check was given to Smitley, that it had been completed as to the amount thereof by the Debtor's son, (b) the Debtor even knew, at the time when some implicit representation was made as embodied by the tender of the first check that was given, that such implied representation had been made, let alone that the same was false, (c) the Debtor made such implied representation with the intent and purpose of deceiving Smitley, and (d) Smitley even actually relied, let alone justifiably relied, on such implied representation that such check would be honored in an amount Smitley knew the Debtor had never agreed to pay. Consequently, Jones fails to preponderantly prove that the Debtor engaged in actual fraud and/or made a knowingly false representation when the first check was handed over to Smitley on April 26, 2006.

      Second, and even more fatal to Jones' position, the subject of Ohio Valley Towing's claim – i.e., the debt that is sought to be declared nondischargeable in the instant matter – is limited to nothing more than the services that Ohio Valley

7

Towing performed regarding the Tractor Trailer (i.e., cleaning up the accident scene, preparing the Tractor Trailer for righting onto the roadway, towing to Ohio Valley Towing's storage area, and storage of said vehicle). Unfortunately for Jones, the testimony at trial conclusively reveals that such services were not, indeed could not, have been obtained by the fraud/false representation alleged to have been committed by the Debtor. The Court so holds because such services had been fully performed, that is they were completed, before April 26, 2006, which means that the fraud/false representation, which is alleged to have not been committed any earlier than such date, necessarily could not have enabled the Debtor to obtain such services. The Court suspects that Jones realizes the foregoing flaw in his position because Jones appears to argue that (a) the alleged fraud/false representation by the Debtor enabled the Debtor to obtain the return of the Tractor Trailer even if such fraud/false representation did not enable the Debtor to obtain Ohio Valley Towing's services, (b) the Tractor Trailer constitutes "property" within the meaning of § 523(a)(2)(A), and (c) such fraud/false representation thus enabled the Debtor to obtain property, which should suffice to make Ohio Valley Towing's claim nondischargeable under § 523(a)(2)(A). Unfortunately for Jones, the subject of Ohio Valley Towing's claim is not the Tractor Trailer or its return, it is the services performed on such vehicle; since such services were not obtained by any fraud/false representation, Ohio Valley Towing's claim is not nondischargeable under § 523(a)(2)(A). Therefore, even if Jones were to succeed in preponderantly proving that the Debtor engaged in actual fraud and/or made a knowingly false representation

8

when the first check was handed over to Smitley on April 26, 2006, such fraud/false representation would not suffice to render Ohio Valley Towing's claim nondischargeable under § 523(a)(2)(A).

Finally, the Court can distinguish the three court decisions that Jones relies on as supportive of his position, namely Forbes v. Four Queens Enterprises, Inc., 210 B.R. 905 (D.R.I. 1997); In re Slaughter, 1995 WL 506827 (Bankr.E.D.Va. 1995); and In re Fitzgerald, 109 B.R. 893 (Bankr.N.D.Ind. 1989). First, in contrast to the instant matter, fraud and/or a false representation was found to have been present in each of the cases of Forbes, Slaughter, and Fitzgerald. Second, and also in contrast to the instant matter, the subject of the debt that was sought to be declared nondischargeable in Forbes, Slaughter, and Fitzgerald – i.e., the money, property, services, or credit that was obtained by the debtors, and that led to the incurrence of the debt in question, in each of such cases – was obtained by fraud or a false representation. That the subject of the debt that was sought to be declared nondischargeable in Forbes and in Slaughter was obtained by fraud or a false representation is readily apparent. As for Fitzgerald, while the same is not nearly as apparent therein, the Fitzgerald court did hold that "th[e] overall conduct by the Defendant [(i.e., the debtor therein)] evinces to this Court an intent to deceive the Plaintiff from the time the Plaintiff told the Defendant he could place the insurance check in his own account rather than endorse it over to the Plaintiff," Fitzgerald, 109 B.R. at 901; because such time referred to by the Fitzgerald court precedes when much of the services were performed by the Plaintiff therein, and since such services

9

constitute the subject of the debt that was sought to be declared nondischargeable in Fitzgerald, the Fitzgerald decision can be construed such that the court therein held that the subject of the debt that was sought to be declared nondischargeable therein was obtained by the deception of the debtor therein.  However, to the extent that the Fitzgerald decision cannot be so construed – or, stated differently, to the extent that the Fitzgerald court can be said to have only held that such debtor's deception was actionable under § 523(a)(2)(A) merely because such debtor, by virtue of such deception, obtained the return of such vehicle, which return of vehicle clearly did not constitute the subject of the debt sought to be excepted from discharge therein – the Court respectfully disagrees with, and consequently will not follow, the decision in Fitzgerald given that, if Fitzgerald cannot be so construed, it directly conflicts with the decisions in Spigel, Burke, and McClellan, which latter decisions much more persuasively construe the language of § 523(a)(2)(A).

**CONCLUSION**

For all of the foregoing reasons, Ohio Valley Towing's judgment claim cannot be declared nondischargeable pursuant to § 523(a)(2)(A) and, therefore, such debt shall be discharged. Accordingly, judgment in the instant adversary proceeding shall be entered in favor of the Debtor and against Jones.

**BY THE COURT**

**M. BRUCE McCULLOUGH,
U.S. Bankruptcy Judge**

**DATED:     June 30, 2010**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| **JACOB DRESSLER d/b/a CLOVER LANE FARM,** : | **Bankruptcy No. 07-25926-MBM** |
| Debtor. : | **Chapter 11** |
| **Brian W. Jones t/d/b/a Executive Judgment Enforcement,** : | |
| Plaintiff, : | |
| v. : | **Adversary No. 08-2070-MBM** |
| **Jacob Dressler d/b/a Clover Lane Farm,** : | |
| Defendant. : | |

## ORDER OF COURT

**AND NOW,** this **30th day** of **June, 2010**, for the reasons, and utilizing the nomenclature, set forth in the accompanying Memorandum Opinion of the same date; and subsequent to notice and a trial on the matter that was held on May 12, 2010, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a)  Ohio Valley Towing's judgment claim cannot be declared nondischargeable pursuant to § 523(a)(2)(A) and, therefore, such debt shall be discharged; and

(b)  judgment in the instant adversary proceeding shall accordingly be entered in favor of Jacob Dressler, the Debtor and the instant defendant, and

against Brian W. Jones, the instant plaintiff.

**BY THE COURT**

**  /s/  **
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

cm:   James Francis Donohue, Esq.
        214 Morgan Center
        101 East Diamond Street
        Butler, PA 16001

        Gary H. Simone, Esq.
        Rishor Simone
        Suite 208, 101 E. Diamond Street
        Butler, PA 16001